c:\users\aam199\appdata\local\microsoft\windows\inetcache\content.outlook\ho5vlwo7\smp paymaster agreement 4.8.20 clean_final2 (002)(ahs_leg.04.09.20) (002).docx

## PAYMASTER AGREEMENT

| | |
|---|---|
| **Paymaster:** | MICHAEL H. WEISS, P.C. ("Paymaster") |
| **Phone Number:** | +1(310) 913-1774 |
| **Address:** | 10203 Santa Monica Blvd., 5th Floor, Los Angeles, CA 90067 |
| **E-mail:** | mhw@mhw-pc.com |
| **Signatory:** | Michael H. Weiss, Esq. |

This Paymaster Agreement ("Agreement") is issued on behalf of:

(i) The Paymaster named above (the "Paymaster");

(ii) Adventist Health System Sunbelt Healthcare Corporation DBA AdventHealth ("AdventHealth") whose designated representative is Marisa Farabaugh, whose business address is 900 Hope Way, Altamonte Springs, FL 32714, whose email address (for notifications) is Marisa.Farabaugh@adventhealth.com and telephone: +1(407)-357-1016 (for notifications); and

(iii) Tomax Capital Management, Inc. ("TCM") whose designated representative is Tom Efrati with a business address of 3151 Cahuenga Blvd., Los Angeles, CA 90068, email address (for notifications) tom@tomaxcapital.com and telephone number (for notifications) (310) 745-9239.

(iv) Paymaster, AdventHealth, and TCM may be referred to herein individually as a "Party" and collectively as the "Parties".

Transaction Procedures:

a) Pursuant to that certain purchase order (P.O.) dated April 8, 2020 and TCM Invoice _____, AdventHealth has contracted to purchase 10,000,000 3M N95 1860 ventilator masks (collectively, the "Masks") at the price of $5.75 per Mask. The terms of said P.O. and Invoice are incorporated by this reference.

b) Upon execution of this Agreement, AdventHealth shall wire the sum of Fifty-seven Million Five Hundred Thousand Dollars and No Cents ($57,500,000.00) into the the following IOLTA account (the "Account") maintained by the Paymaster:

| | |
|---|---|
| Bank Name: | Union Bank, |
| Address: | 1901 Avenue of the Stars, Los Angeles, CA 90067 |
| ABA Routing No: | 122000496 |
| SWIFT No.: | BOFCUS33MPK |
| Account number: | ███████ |
| Account name: | Michael H Weiss, P.C. IOLTA |

c) TCM shall then provide a redacted 3M distributor invoice with certificates via email to AdventHealth.

d) The redacted invoice and certificates are confidential and subject to the confidentiality and noncircumvention provisions in this Agreement.

e) Upon AdventHealth's acceptance of the redacted invoice and certificates, the Paymaster shall pay all other funds in its possession as designated in this Agreement.

The Parties further agree as follows:

1. Payments from the Account shall be made by Fed Wire.


ADVENTHEALTH: [MF] TC[SE] Paymaster [MHW]

# EXHIBIT "A"

2. Subject to the Transaction Procedures, the Paymaster will make payments when due no more than two (2) business days after receiving good and clean funds indefeasibly into the Account described herein and the release of any and all bank holds on any such funds. All payments to or from the Parties under this Agreement shall be from the Account.

3. The Paymaster's fee is one-half of one percent (0.50%) of the funds paid into the Account, plus applicable banking fees and taxes, if any. The Paymaster's fee is fully earned on receipt and paid upon the first disbursement of funds even if funds are returned to AdventHealth if one of the Parties cancels the transaction.

4. The Paymaster provides no legal advice on the documentation of any transaction, its details or concerning the legal or financial merits of the transaction. Any such advice shall be subject to a further retainer agreement signed by all Parties. The Parties agree that, absent such a further written retainer agreement signed by all Parties, no attorney-client relationship will be formed.

5. In its performance of services hereunder, the Paymaster cannot and does not warrant results, save as expressly provided herein. Be assured, the Paymaster desires to afford the Parties with conscientious and diligent service to achieve solutions consistent with the spirit of this Agreement. The Paymaster will take reasonable steps to keep the Parties informed as to the status of all matters for which the Paymaster provides services. The Parties agree to provide timely, complete and accurate information and documentation to the Paymaster to enable the Paymaster to discharge its duties hereunder.

6. The Paymaster only provides services as a fiduciary to ensure that any funds and instruments deposited into the Account are disbursed or delivered as instructed. The Parties shall provide the Paymaster with written instructions that include the amounts to be paid to the Parties, their bank coordinates, their signatures accompanied by appropriate identification such as a passport or a driver's license, their appropriate tax identification number or forms and an attestation by them that the funds transferred to the Paymaster are not the proceeds of any illegal activity and will not be used for any such purposes.

7. In following instructions, the Paymaster is obligated only to transfer funds and related documents as specified in any written payment instructions. In so doing, the Paymaster has the right to rely exclusively upon documents in electronic form provided by the Parties. However, if necessary, the Paymaster reserves the right to inspect originals of any document to verify its authenticity before disbursing any funds.

8. If the conditions herein are not completely fulfilled within ten (10) business days following the receipt of the funds in the Account, the Paymaster shall notify all Parties. Within five (5) business days following the transmission of such notice, subject to a change authorized by the Parties, the Paymaster will return said funds by bank wire to the bank account from which the deposits were received, less its Paymaster Fees incurred up to that date and previously authorized disbursements. AdventHealth's banking information is as follows:

> Bank of America
> Routing number 026009593
> Credit Adventist Health System
> Credit account ███████████

9. The fees payable to the Paymaster will be owed and deemed immediately paid upon the receipt of the individual tranches of any funds deposited by AdventHealth. The Paymaster Fee shall not depend upon the completion of the underlying transaction. All fees for the escrow services shall be paid from the funds paid hereunder into the Account.

2

ADVENTHEALTH:  Paymaster [mcmw]

10. The Paymaster shall have no liability to either Party or any third party provided the Payments are faithfully disbursed in accordance with the terms and conditions of this Agreement.

11. The Paymaster reserves the right to terminate the transaction and return funds deposited into the Account to the persons from whom the Paymaster has received them if it deems any of the documents, transfers or instructions to be inadequate, ambiguous, illegal or improper. Before doing so, the Paymaster will give any Party an opportunity to address any such concerns. The Paymaster desires to ensure that transfers in fact occur as intended but do not violate any laws. In this regard, the Paymaster reserves the right to make whatever inspections it deems necessary to ensure that any payments, transfers or transactions do not violate any of the Foreign Corrupt Practices Act, anti-money laundering laws, counter-terrorism laws or some other similar banking regulations. However, the Paymaster will provide no legal advice or opinions on whether a particular payment, transfer or transaction comports with any such laws and regulations. Rather, the Paymaster reserves the right to conduct appropriate due diligence to assure itself that there have been no such violations. If the Paymaster concludes that there may be a violation of any such laws, it reserves the unfettered right to terminate the transaction and return all funds or instruments delivered.

12. The entitlement to fees or other benefits under this Agreement covers the initial transaction described above, as well as any other future business transactions entered into by the Parties where the Paymaster is designated as such on relevant contract documents, including all extensions and rollovers, unless either of the Parties indicate to each other that on a particular Transaction that this Agreement shall not apply.

13. After the Paymaster's services conclude, the Paymaster will, upon the Parties request and payment of copying costs, deliver any original documents, along with any funds or property of the Parties, in the Paymaster's possession. Unless the Paymaster notifies the Parties otherwise in writing, the Paymaster will retain the Parties' original documents for a period of ninety (90) days after the Paymaster closes its file. At the expiration of the 90-day period, the Paymaster may destroy these original documents unless a Party notifies the Paymaster in writing that it wishes to take possession of them.

14. The Parties agree to indemnify the Paymaster and hold it harmless for all claims whether civil or criminal that may be asserted by third parties arising out of its performance of this Agreement, unless it shall be proved that the Paymaster was negligent or reckless or acted intentionally in bad faith or with willful misconduct, such misconduct having contributed to the claims asserted by such third parties. The Paymaster's right to indemnity includes the right to be reimbursed for any legal fees incurred in defending such claims, even if no judgment or decree is entered against the Paymaster.

15. The Parties have the right to consult with an independent attorney regarding the terms of this Agreement, and the Paymaster urges them to do so. In signing this Agreement, each Party acknowledges that the Paymaster has requested each Party to seek independent legal or business advice with respect to this Agreement, and that each Party has either (i) sought and obtained such advice or (ii) has knowingly refrained from doing so.

16. The Parties shall send a copy to the Paymaster of any other relevant available documentation (such as associated sale and purchase agreements) as soon as possible upon the written request of the Paymaster. The Parties shall make all reasonable endeavors to obtain copies of such documentation requested by the Paymaster.

17. The Payments will be made by the Paymaster without protest, significant delay or deductions, other than standard bank charges.

18. The Parties agree that the Paymaster assumes no responsibility for success or failure of the underlying transactions and cannot be held liable for any reason associated with them, except for the actions outlined in Section 14 of this Agreement.

19. Nothing in this Agreement shall be construed as creating any form of partnership or employee/employer relationship between the Parties. Even though the Paymaster is an attorney at law, the Paymaster provides no legal services hereunder except for payment, delivery of documents and accounting of funds that come into the Account.

20. This Agreement shall be valid, legally binding and enforceable even if any of the specific details of the Transactions, or the relevant transaction codes, are changed by the banks involved or by any of the Parties at any point during the Transactions. However, the Parties shall be entitled to change their bank coordinates at any time upon reasonable written notice to the Paymaster.

21. In connection with any litigation, including appellate proceedings, the prevailing Party shall be entitled to recover reasonable attorneys' fees and costs. In the case of the Paymaster initiating an interpleader action, the reasonable attorneys' fees and costs of the Paymaster shall be paid from the funds in the Account, upon approval of the court.

22. The Parties both indemnify, defend and hold harmless the Paymaster from any and all claims, suits, judgments or demands arising out of this Agreement, as long as the Paymaster faithfully disburses all sums in accordance with the terms and conditions of this Agreement.

23. These instructions, and any subsequent written instructions or modifications given mutually by the Parties to the Paymaster in connection herewith and accepted by the Paymaster, shall constitute the complete escrow instructions, notwithstanding any other agreement which the third parties may have concerning the subject matter hereof. The Paymaster shall have no duty to construe or determine the performance or nonperformance of any term or condition of any contract or agreement between the Parties (or between either Party and any third parties), and the duties and responsibilities of the Paymaster are limited to those specifically stated herein.

24. These terms, including exhibits and all matters relating to this Agreement, shall be governed by, and construed in accordance with, the laws of the State of Florida (without giving effect to the choice of law principles thereof). Any action based on or arising out of this Agreement or the products or services provided or to be provided hereunder shall be brought and maintained exclusively in any court of the State of Florida or any federal court of the United States, in each case located in Seminole County for actions brought in state courts, or in the Middle District of Florida sitting in Orlando, Florida for actions brought in federal court. Each of the Parties hereby expressly and irrevocably submits to the jurisdiction of such courts for the purposes of any such action and expressly and irrevocably waives, to the fullest extent permitted by law, any objection which it may have or hereafter may have to the laying of venue of any such action brought in any such court and any claim that any such action has been brought in an inconvenient forum. If any provision of such terms or the Agreement is found by a court of competent jurisdiction to be unenforceable, such provision shall not affect the other provisions, but such unenforceable provision shall be deemed modified to the extent necessary to render it enforceable, preserving to the fullest extent permissible the intent of the parties set forth herein.

25. [deliberately omitted].

26. [deliberately omitted].

27. [deliberately omitted].

28. [deliberately omitted].

29. [deliberately omitted].

4

ADVENTHEALTH: [MH TCM] Paymaster [mmw]


30. The Parties confirm they have no objection to any of the Parties assigning the fees they receive under the Transaction, in part or in whole, however notice of this shall be first given in writing to the Paymaster, no less than three (3) banking days prior to the proposed payment to the assignee of a Party's fees. Any such assignee must consent to the terms of this Agreement in writing and provide the Paymaster with any AML compliance that the Paymaster might request. The Paymaster reserves the right not to make a payment to any assignee if the Paymaster is unsatisfied with the assignee's AML compliance.

31. Electronic or faxed transmission of the signed version of the Agreement shall be valid, legally binding and enforceable in respect of all its provisions. However, any Party may demand the original of any such document. However, the demand for any such document shall neither excuse nor delay performance by any Party, unless the receipt of such originals is a condition for payment or other performance under the Agreement.

32. [deliberately omitted].

33. [deliberately omitted].

34. Payments shall be paid in the full amount and not in installments unless otherwise permitted herein.

35. This Agreement is solely for the benefit of the Parties to this Agreement, and no other person or entity. To the extent that any Party is acting on behalf of another person or entity, the Paymaster's duties hereunder shall only extend to the Parties to this Agreement; and not to the persons or entities that a Party might represent. For example, to the extent that a Party is a corporation, the Paymaster's duties shall extend only to the Party corporation, and not to its shareholders, officers or directors. [deliberately omitted].

36. All persons executing this Agreement on behalf of a governmental agency, trust, corporation, partnership or limited liability party hereby represent and warrant that they have the requisite authority to execute this Agreement. The Paymaster may request further proof of such authority.

37. [deliberately omitted].

38. The Parties may cancel this Agreement with five (5) days' written notice to the Paymaster; however, each Party shall remain entitled to any funds due to it up to the effective date of such termination.

39. Prior to the disbursement of any funds, the Parties shall provide the Paymaster with the appropriate tax identification numbers and forms. If in the Paymaster's opinion, local tax law requires the Paymaster to withhold funds otherwise payable to a Party, the Paymaster shall do so in the amount required by law unless the Party produces an opinion of a lawyer or an accountant indicating that such withholding is not required.

40. The Paymaster may, but is not required, to hold funds in an interest-bearing account.

41. The Paymaster is authorized to provide to its bank, any and all contracts and information required by that bank to comply with any bank regulation and laws, including bank secrecy acts, anti-money laundering statutes and the like. The Paymaster will use his best efforts to assure that the bank receives the documents in confidence. However, the Paymaster will not refuse to produce such documents for its bank which are sought for these pAdventHealthoses. Copies of all documents provided to the Paymaster's bank will be made available to all of the Parties 24 hours prior to their disclosure to the bank. The Paymaster shall not be liable for any loss to any Party arising out of its compliance with the provisions of this paragraph.

42. The Parties have the right to consult with another attorney regarding the terms of this engagement letter, and the Paymaster urges each Party to do so. In signing this Agreement, each Party acknowledges that the Paymaster has requested that each Party

seek independent legal or business advice with respect to this Agreement, and that each Party has either sought and obtained such advice or has knowingly refrained from doing so.

DATE OF ISSUE: April 9, 2020

| PARTY: Adventist Health System Sunbelt Healthcare Corporation DBA AdventHealth | PARTY: Tomax Capital Management, Inc. |
|---|---|
| *[signature]* <br> Marisa Farabaugh, SVP Supply Chain | *[signature]* <br> Tom Efrati, CEO |

**MICHAEL H. WEISS, ESQ. PROFESSIONAL CORPORATION**

*[signature] Michael H. Weiss*

By: _____
         Its President

The details of the Parties covered by this AGREEMENT are as follows, together with any relevant division of funds distributed by the Paymaster:

Tomax Capital Management, Inc.

Wells Fargo Bank NA
420 Montgomery St., San Francisco, CA 94104
Tomax Capital Management Inc.
Account Name: Tomax Capital Management Inc.
Account Number: █████
ABA Routing No.: 122000248
SWIFT Code: WFBIUS6S
Bank Officer # 1 Name: Albear Aiad
Telephone Number: +1-818-506-2635
Fax Number: +1-818-506-2640

# Purchase Order

**ADVENTHEALTH AMWAY**
400 W CHURCH ST LOADING DOCK ENTRANCE
SOUTH ST BETWEEN HUGULEY AND DIVISION AVE
C/O
ORLANDO FL 32801
United States

| Approved | | Dispatch Via Phone |
|---|---|---|
| Purchase Order CP003-0001775749 | Date 2020-04-08 | Revision |
| Payment Terms Due Now | Freight Terms FOB OK | Ship Via COMMON CARRIER |
| Buyer PETER MUELLER | Phone 407/357-2117 | Currency USD |
| Buyer Fax Number 407/357-3797 | Ship Priority | Ship to Acct Num |
| Buyer Email Peter.Mueller@AdventHealth.com | | GLN |

| Supplier: 0000042088 TOMAX CAPITAL MANAGEMENT INC 3151 CAHUENGA BLVD LOS ANGELES CA 90068-0000 United States | Ship To: | ADVENTHEALTH AMWAY 400 W CHURCH ST LOADING DOCK ENTRANCE SOUTH ST BETWEEN HUGULEY AND DIVISION AVE C/O ORLANDO FL 32801 United States | Attention: See Detail Below | Bill To: | 902 INSPIRATION AVE ALTAMONTE SPRINGS FL 32714 United States |

Tax Exempt? Y        Tax Exempt ID: 85-8012671486C-2

| Line-Sch | Item/Description | Mfg Item ID/ Manufacturer Name | Quantity | UOM | PO Price | Extended Amt | Due Date |
|---|---|---|---|---|---|---|---|
| 1 - 1 | 3MN951860 OEM 3M N95 1860 Masks | | 10000000.00 | EA | 5.75 | 57,500,000.00 | 04/18/2020 |

Attention: Olesia Korchuk

Total PO Amount    57,500,000.00

Unauthorized